**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DARRELL LAMONT STALLINGS,

    Plaintiff-Appellant,

v.

ROGER WERHOLTZ, Secretary, Kansas
Department of Corrections; STUART A.
BAILEY, Corrections Supervisor II,
Lansing Correctional Facility; COLETTE
WINKLEBAUER, Deputy Warden,
Lansing Correctional Facility; DUANE
MUCKENTHALER, Corrections
Counselor Manager, Segregation Unit,
Lansing Correctional Facility; JANET
MYERS, Corrections Supervisor II,
Intelligence and Investigation Department,
Lansing Correctional Facility; RON
BAKER, Correctional Officer, Lansing
Correctional Facility; ELIZABETH RICE,
Corrections Manager, Risk Management,
Kansas Department of Corrections; RAY
ROBERTS, Warden, El Dorado
Correctional Facility; LARRY HOSHAW,
Corrections Counselor Manager,
Supermax Segregation Unit, El Dorado
Correctional Facility; DAVID MCKUNE,
Warden, Lansing Correctional Facility;
CHARLES SIMMONS, Deputy
Secretary, Kansas Department of
Corrections; DAVID RIGGIN,
Corrections Classification Manager,
Kansas Department of Corrections;
DENISON COELNER, Deputy Warden,
El Dorado Correctional Facility;

No. 12-3028
(D.C. No. 5:10-CV-03119-KHV)
(D. Kan.)

MAUREEN MALOTT, Corrections
Counselor Manager, Supermax
Segregation Unit, El Dorado Correctional
Facility; JESS QUIDACHAY,
Corrections Supervisor II, El Dorado
Correctional Facility; BRANDON
WALMSLEY, Corrections Counsel II,
Supermax Segregation Unit, El Dorado
Correctional Facility; JAMES
HEIMGARTER, Deputy Warden, El
Dorado Correctional Facility;
JOHN/JANE DOE, Secretary Designee,
Kansas Department of Corrections;
MARCELLE CAPPEL-SCHMIDLING,
Corrections Supervisor II, Intelligence and
Investigation Department, Lansing
Correctional Facility,

      Defendant-Appellees.

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

submitted without oral argument.

Plaintiff Darrell L. Stallings, proceeding pro se, appeals from the district court's grant of summary judgment in favor of defendants on his claim brought under 42 U.S.C. § 1983. Stallings contends there were disputes of material fact precluding summary judgment on his claim that corrections officials violated his Fourteenth Amendment right to due process by detaining him in administrative segregation without meaningful reviews. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Stallings is currently serving a life sentence in the custody of the Kansas Department of Corrections (KDOC). Prison officials placed him in administrative segregation at Lansing Correctional Facility (LCF) in February 2008 pending an investigation into suspicious injuries on his body. The injuries on his face and head were consistent with having been in a fight, and officials found Stallings's torn, bloody sweatshirt on a nearby cell block. In an initial review of the situation, the Administrative Segregation Review Board (ASRB) decided Stallings should be placed in segregation "pending investigation of his housing needs." ROA at 217. When prison investigator Tim Robinson followed up, he determined that Stallings was in "serious danger" based on "numerous letters [sent to the warden] stating that [Stallings] will be killed if returned to population." Id. at 227. Robinson found that these threats were likely due to Stallings's involvement in drug trafficking and debts he owed to other inmates at LCF. Robinson concluded that Stallings should remain in segregation "[p]ending a meeting . . . to

3

determine [his] housing needs." Id. at 228.

Stallings received reviews of his segregation status in March, April, May, and June 2008. On June 26, 2008, an administrative segregation report changed Stallings's status from "pending investigation" to "Other Security Risk." Id. at 224. The report concluded that Stallings would likely "become [a] victim[] of additional violence or [he] will take retaliatory actions that will lead to violence." Id. The report concluded by recommending that Stallings be moved to "lockdown" at the El Dorado Correctional Facility (EDCF). Id. Stallings was moved to EDCF on August 7, 2008.

Once at EDCF, Stallings received monthly segregation reviews; officials prepared a report after each meeting. See id. at 248-300. Stallings was allowed to attend the reviews and comment on the record, although he did not always do so. On June 28, 2011, he began the Behavior Management Program at EDCF. In February 2012, he was transferred to the Hutchinson Correctional Facility.

In May 2010, Stallings filed this pro se action under 42 U.S.C. § 1983 against defendant-appellee Roger Werholtz, the state secretary of corrections, and other named KDOC officials. In a verified complaint, he claimed to have a protected liberty interest in avoiding the conditions of confinement in administrative segregation. He claimed that KDOC officials violated his Fourteenth Amendment right to due process by retaining him in these conditions without providing meaningful reviews. In describing the conditions, Stallings alleged that he was housed in a seven-by-ten-foot cell for at least twenty-three hours a day. He explained he was allowed out of his cell for a total of five hours'

4

recreation each week. He was only permitted video conference visits with family and friends, and his interaction with other inmates was "obscured by thick rubber attached around the metal doors to each cell." Id. at 189.

Prison officials filed a report in district court that included documents relating to the investigation and Stallings's ongoing placement in administrative segregation. See Martinez v. Aaron, 570 F.2d 317, 319-20 (10th Cir. 1978) (authorizing the filing of an administrative record by prison officials in pro se prisoner litigation). This "Martinez report" contained copies of all monthly reviews from the time Stallings was placed in segregated confinement to the time he was released. See ROA at 248-300. Stallings filed objections to the Martinez report. Id. at 397.

Both parties moved for summary judgment. In a written order, the district court granted the defendants' motion.[1] The district court entered judgment on January 9, 2012. Stallings brought this timely appeal.

## II

Stallings argues on appeal that there are disputes of material fact on his due process/liberty interest claim that preclude summary judgment for defendants. We review the district court's grant of summary judgment de novo, applying the same standard the

---

[1] In addition to the due process/liberty interest claim that is the subject of this appeal, the district court granted summary judgment for defendants on two other issues: (1) Stallings's claim that he had "a protected right to have a grievance investigated," see ROA at 558; and (2) Stallings's claim for damages against prison officials acting in their official capacity, see id. at 553-54. Stallings did not appeal these portions of the court's summary judgment order.

district court applies under Federal Rule of Civil Procedure 56. Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007). Because Stallings proceeds pro se, we construe his submissions liberally; however, we do not act as his advocate. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## A

"In the penological context, not every deprivation of liberty at the hands of prison officials has constitutional dimension. This is so because incarcerated persons retain only a 'narrow range of protected liberty interests.'" Rezaq v. Nalley, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting Abbott v. McCotter, 13 F.3d 1439, 1442 (10th Cir. 1994)). For example, a liberty interest may arise when an inmate faces conditions of confinement that impose an "'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Id. (quoting Wilkinson v. Austin, 545 U.S. 209, 223 (2005)). When conditions do not rise to that level, we will not review the procedural steps taken by prison officials in determining the appropriate placement of inmates. See id. at 1016 ("Because no liberty interest is implicated, we do not reach the question of whether the inmates received adequate process to justify their transfers to ADX."). While a liberty interest "may arise from an expectation or interest created by state laws or policies," we may not parse the language of prison regulations as part of this inquiry; rather, we look to the nature of the conditions themselves in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 222-23.

In a recent decision, we analyzed "four potentially relevant, nondispositive

6

factors" to determine whether certain conditions of confinement impose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Rezaq, 677 F.3d at 1011-12. In particular, we noted that

> relevant factors might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, . . . ; and (4) the placement is indeterminate . . . .

Id. at 1012 (quoting Estate of DiMarco v. Wyo. Dep't of Corr., 473 F.3d 1334, 1342 (10th Cir. 2007)) (brackets omitted). While these factors do not "serve as a constitutional touchstone," they do facilitate "a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." Id.

**B**

On the due process/liberty interest claim, the district court applied the four factors from DiMarco. First, in determining whether the placement "related to and furthered a legitimate penological interest," the court found that Stallings failed to controvert defendants' evidence that prison officials acted based on "legitimate security interests to protect plaintiff and to reduce the risk to staff and other inmates." ROA at 555. Second, in considering the extremity of the conditions of confinement, the court observed that the defendants did not controvert Stallings's facts "which reflect the severe nature of his confinement." Id. at 556. Rather, "defendants merely state[d] that 'the conditions, while

7

not comfortable, were not extreme.'"[2]  Id.  Third, the court found no evidence that placement in administrative segregation "led to loss of good time credit or otherwise increased the length of his confinement."  Id. at 556-57.  Finally, in determining whether the placement was indeterminate, the court found "uncontroverted evidence that prison officials reviewed plaintiff's placement on a monthly basis."  Id. at 557.  "Based on all of the DiMarco factors," the district court found that Stallings's "conditions of confinement, though certainly harsh, did not impose a significant hardship."  Id.

After reviewing the record de novo, we discern no error in the district court's grant of summary judgment for defendants.

First, there is no material factual dispute as regards KDOC's legitimate penological interest in segregating Stallings from the general population.  Even after the investigation into his injuries was closed, prison officials continued to suspect Stallings would retaliate if returned to general population.  There is also ample evidence indicating Stallings would have been attacked, and possibly killed, upon returning to general population.

In light of our rule requiring liberal construction of pro se submissions, we have closely reviewed Stallings's allegations that his placement was the product of a prison official's "personal vendetta against him."  See Aplt. Br. at 13.  We construe this as an argument that Stallings was not held in segregation in furtherance of legitimate

---

[2] The district court considered the parties' conflicting accounts on this prong, but it did not make an explicit finding as regards the extremity of the conditions.

penological interests. With this in mind, we have conducted a searching review of the record. We find no evidence that defendant Marcelle Cappel-Schmidling placed Stallings in administrative segregation "to reap revenge." Id. Likewise, defendant Duane Muckenthaler's response to Stallings's grievance does not reasonably suggest he "worked in cooperation with Defendant [Cappel-]Schmidling to make sure Plaintiff was placed in indeterminate segregation status." Id. The response contains nothing more than factual statements about Stallings's status. See ROA at 100-01. There is thus no dispute of material fact regarding KDOC's legitimate penological interest in segregating Stallings as a risk to institutional security based upon prison officials' concern for Stallings's safety and the safety of those he may harm.

Second, the conditions of confinement in administrative segregation at EDCF are not extreme. "In cases involving placement in nondisciplinary administrative segregation, it is appropriate to compare the conditions at issue with those ordinarily experienced by inmates with similar records and sentences." Rezaq, 677 F.3d at 1012. Stallings alleges he was kept in a seventy-square-foot cell for at least twenty-three hours a day. He also explains that he is limited to five hours outside his cell each week, and any visits with family are conducted via videoconferencing. We do not find these conditions to be extreme. Because the conditions Stallings describes are "substantially similar to conditions experienced in any solitary confinement setting," id. at 1015, this factor weighs against finding a liberty interest.

Under the third factor, we agree with the district court that there is no evidence this

9

placement increased the length of Stallings's confinement. Compare Wilkinson, 545 U.S. at 224 (holding that liberty interest exists where, among other things, placement in segregated confinement disqualifies an otherwise eligible inmate for parole consideration), with Rezaq, 677 F.3d at 1015-16 ("There is no evidence that confinement at ADX lengthened plaintiffs' sentences."). This factor also weighs against the creation of a liberty interest.

Finally, we consider whether prison officials indefinitely retained Stallings in administrative segregation without periodic placement reviews. Throughout his placement, Stallings received monthly reviews in which he was permitted to participate.[3] In contrast, the inmates in Wilkinson were given annual reviews after an initial thirty-day review. Wilkinson, 545 U.S. at 224. And in Rezaq, this factor weighed against finding a liberty interest because the inmates were given twice-yearly reviews. That said, "it is not necessary for us to closely review the process at this stage. The availability of periodic reviews merely suggests that the confinement was not indefinite." Rezaq, 677 F.3d at 1016. We conclude that no rational factfinder could find Stallings's placement in

---

[3] Stallings contends these proceedings were a sham, but there is no support in the record to support that allegation. It is true that many of the reports from his monthly reviews rely on the initial placement facts as grounds for continued segregation. But this is not evidence that the reviews were meaningless. It is only logical that the baseline rationale for placing Stallings in segregation and keeping him there would not change with each review. That the prison officials did not revise their reasoning at each review does not make the reviews any less "meaningful." Circumstances justifying an inmate's continuation in administrative segregation are often slow to change. This is especially so when the placement is based on documented threats to the inmate's life and the inmate's history of retaliatory violence.

administrative segregation was of indefinite duration.

Considering each of these factors, we conclude that Stallings's confinement in administrative segregation did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Summary judgment for defendants was appropriate because "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Hollingsworth v. Hill, 110 F.3d 733, 737 (10th Cir. 1997) (quotation omitted).

### III

The judgment of the district court is AFFIRMED. Appellant is reminded of his obligation to continue making partial payments of the appellate filing fee until it is paid in full.

Entered for the Court

Mary Beck Briscoe
Chief Judge

11