FILED
United States Court of Appeals
Tenth Circuit

April 9, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARK MCADAMS,

        Plaintiff - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS, in its official capacity;
WYOMING DEPARTMENT OF
CORRECTIONS DIRECTOR, in his
official capacity a/k/a Robert O. Lampert;
ROBERT O. LAMPERT, in his individual
capacity a/k/a Wyoming Department of
Corrections Director; WYOMING
DEPARTMENT OF CORRECTIONS
STATE PENITENTIARY WARDEN, in
his official capacity a/k/a Eddie Wilson;
EDDIE WILSON, in his individual
capacity a/k/a Wyoming Department of
Corrections State Penitentiary Warden;
WYOMING DEPARTMENT OF
CORRECTIONS STATE
PENITENTIARY DEPUTY WARDEN, in
his official capacity a/k/a Todd Martin;
TODD MARTIN, in his individual capacity
a/k/a Wyoming Department of Corrections
State Penitentiary Deputy Warden;
WYOMING DEPARTMENT OF
CORRECTIONS STATE
PENITENTIARY HOUSING MANAGER,
in her official capacity a/k/a Janell Thayer;
JANELL THAYER, in her individual
capacity a/k/a Wyoming Department of
Corrections State Penitentiary Housing
Manager,

        Defendants – Appellees.

No. 13-8074
(D.C. No. 2:12-CV-00263-NDF)
(D. Wyo.)

## ORDER AND JUDGMENT[*]

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Mark McAdams, a prisoner in the Wyoming Department of Corrections (DOC), was placed on long-term administrative segregation (LTAS) in January 2011. He was initially placed on LTAS pending an assault investigation but has remained on LTAS, he claims, due to (1) false statements from a confidential informant (CI) indicating his safety is at risk in general population, and (2) past conduct for which he has already been punished or exonerated. He filed a pro se[1] civil rights complaint against the DOC and several of its officials alleging violations of procedural due process and double jeopardy.

The district judge directed the DOC to prepare and file a *Martinez* report.[2] It did so and accompanied the report with a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

[1] We liberally construe McAdams' pro se filings. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[2] The report takes its name from the opinion in which we approved a district court's order to prison officials to investigate and report on the allegations in an inmate's complaint: *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978).

The judge granted the motion. She concluded McAdams has no protected liberty interest in avoiding confinement in LTAS and thus the due process clause is not implicated. She also rejected the double jeopardy claim because prison disciplinary sanctions—such as administrative segregation—do not implicate double jeopardy protections.

We review the dismissal of a complaint de novo. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1118 (10th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In what turns out to be only a prelude to the ultimate resolution of this appeal, McAdams tells us the district judge improperly accepted the DOC's version of the facts stated in the *Martinez* report. Had the judge accepted his factual allegations, he says, his claims would have survived dismissal.

McAdams has a point, albeit an ultimately insignificant one. He specifically contested a number of facts in the *Martinez* report. Nevertheless, the judge accepted as true the facts as outlined in the report. But *Martinez* reports may not be used at the motion to dismiss stage to resolve factual disputes. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (*Martinez* "process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn pro se prisoner complaints, not to resolve material factual issues."); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (stating a district court may sometimes consider a *Martinez* report in deciding a motion to dismiss a complaint under Rule

12(b)(6) but can do so only "[w]hen the plaintiff challenges a prison's policies or established procedures and the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond"; otherwise the motion to dismiss must be converted to a motion for summary judgment). The district judge should have accepted "as true all well-pleaded factual allegations in [the] complaint" and viewed them in the light most favorable to McAdams. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013)(quotation marks omitted).

McAdams has won a pyrrhic victory. He ultimately loses because his version of the facts, accepted as true, fails to state a claim.

## A. Due Process Claim

According to McAdams, the DOC placed him in LTAS without due process of law in that he was not provided reasons for his placement until fifteen months after his placement and has never been given a hearing to dispute those reasons. But before he can cry foul as to inadequate process, he must identify a liberty interest in avoiding transfer to LTAS. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."); *Rezaq v. Nally*, 677 F.3d 1001, 1016 (10th Cir. 2012) ("Because no liberty interest is implicated, we do no reach the question of whether the inmates received adequate process to justify their transfers to ADX.").

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. State policies or regulations, however, may create a liberty interest in avoiding particular conditions of confinement when they "'impose[] atypical and significant hardship on the

- 4 -

inmate in relation to the ordinary incidents of prison life.'" *Id.* at 221-23 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

We consider several nondispositive factors in determining whether a certain confinement imposes "atypical and significant hardship" (and thus a liberty interest in avoiding such confinement). *Estate of DiMarco v. Wyo. Dep't of Corrs., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007); *see also Rezaq*, 677 F.3d at 1012 n.5. The factors include "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . .; and (4) the placement is indeterminate." *Estate of DiMarco*, 473 F.3d at 1342. "[A]ny assessment [of these factors] must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

In the *Martinez* report, the DOC cited McAdams' safety and disciplinary record as reasons for placing him in LTAS and keeping him there since January 2011. McAdams disputes several key facts in the *Martinez* report, namely, information received from a CI indicating his safety is at risk in general population and the charge of his involvement in gang activities and threatening to harm other inmates. However, while he alleges the CI's information is false,[3] he does not dispute that such information was provided to the DOC. The DOC had reason to question his safety in the general population. Moreover, while he may dispute the accuracy of his reported threats to other inmates and his claimed participation in gang activity, the undisputed facts show a history of serious

---

[3] McAdams' challenges to the credibility of the CI essentially put "the cart before the horse" because they concern the process he was due. Again, he is not entitled to any process under the Constitution absent a liberty interest.

- 5 -

infractions.[4]  The DOC has a legitimate penological interest in confining McAdams in LTAS.

The conditions of LSAT are not pleasant.  McAdams is confined to his cell for twenty-three hours a day; he is limited to one hour of recreation five days a week and three showers a week; the property he is allowed to keep in his cell is restricted; his visits are non-contact; and the lights are on twenty-four hours a day.  But these conditions are not extreme.[5]  *See Rezaq*, 677 F.3d at 1014-15 (concluding conditions were not extreme where inmates had control over their cell lights, the opportunity for outdoor recreation, regular contact with staff, the ability to occasionally communicate with other inmates and their cells contained a television airing religious and educational programming even though cells were small and stark, inmates spent twenty-three hours a day in their cells, their outdoor recreation was limited to a small fenced-in area and they were only allowed five non-contact social visits and two fifteen-minute phone calls per month); *Stallings v.*

---

[4] McAdams selectively disputes the accuracy of his disciplinary history:  (1) the reported stabbing of two inmates is inaccurate (because the second stabbing charge was dismissed by a state judge), and (2) he was not involved in inciting a prison riot (because his conviction was only for criminal mischief).  These disputes are specious.  That a state court judge dismissed a charge based on the State's motion, *see infra Section B*, does not equate to innocence or establish insufficient proof of his guilt for prison disciplinary purposes.  Furthermore, inciting a riot can support a criminal mischief conviction.

[5] Relying on the *Martinez* report, the district judge concluded the conditions of McAdams' confinement in LTAS are not extreme because they mirror those he would experience in general population due to "the heightened custody level his record warrants."  (R. Vol. 1 at 294.)  But the author of the *Martinez* report admitted McAdams' custody classification would be medium in general population (due to the time which has elapsed since his last serious disciplinary violation) and would only be bumped up to maximum if prison staff exercised their authority to override the custody determination.

*Werholtz*, 492 F. App'x 841, 845 (10th Cir. 2012) (unpublished)[6] (deciding conditions not extreme where inmate was confined in seventy square foot cell twenty-three hours a day, had limited time outside his cell each week and social visits were conducted via videoconferencing).

LTAS placement does not increase the duration of McAdams' confinement. Placement in administrative segregation may lengthen an inmate's incarceration if the placement "disqualifies an otherwise eligible inmate for parole consideration." *Wilkinson*, 545 U.S. at 224; *see also Rezaq*, 677 F.3d at 1015-16.  McAdams asserts he has "limited programming/rehabilitative opportunities [in LTAS] making it impossible to conform to his case plan which *may* negatively affect any parole board[']s decision."  (R. Vol. 1 at 155 (emphasis added).)  Even if LTAS placement may influence a parole board's decision it is a far cry from rendering one ineligible for parole.[7]

Finally, the Supreme Court in *Wilkinson* and our own cases suggest two significant indicators of an indeterminate placement:  the length of the placement and the lack of meaningful periodic review.  *See Wilkinson*, 545 U.S. at 224; *Rezaq*, 677 F.3d at 1016; *Estate of DeMarco*, 473 F.3d at 1343-44.  McAdams has now been in LTAS for over three years, but that pales in comparison to the duration of confinement in *Rezaq*, 677 F.3d at 1005-08 (over ten years for one plaintiff; over five years for three plaintiffs). Moreover, his status is regularly reviewed.  According to the *Martinez* report, the DOC's policy is to review LTAS status every ninety days.  McAdams does not dispute the fact of

---

[6] Unpublished opinions are not binding precedent.  10th Cir. R. App. P. 32.1(A). We mention *Stallings* because of its persuasive and reasoned analysis.

[7] While not necessarily a factor in whether LTAS placement increases the duration of confinement, McAdams has not alleged LTAS results in any loss of good time credit.

regular review and admits he has been present at two of the reviews. Thus, his confinement in LTAS is not indefinite. *See Rezaq*, 677 F.3d at 1016 (even though inmates had been housed in ADX for many years, confinement was not indefinite where they were given twice a year reviews); *Estate of DiMarco*, 473 F.3d at 1343-44 (inmate's confinement in administrative segregation for fourteen months was not indefinite where her status was reviewed every ninety days and she was allowed to present her views); *Stallings*, 492 F. App'x at 845-46 (inmate's placement in administrative segregation for over three years was not indefinite where he received monthly reviews in which he was allowed to participate).[8]

Taken together, the factors do not indicate McAdams has a protected liberty interest in avoiding LTAS confinement. His due process claim was properly dismissed.

### B. Double Jeopardy Claim

We can easily dispose of McAdams' double jeopardy claim. His only complaint on appeal concerns the DOC's use of a stabbing/assault charge to justify, in part, his LTAS confinement even though a Nevada state court judge dismissed the charge. The record shows criminal charges were dismissed against McAdams by a Nevada state court judge upon motion by the State. It is unclear what those charges entailed but even

---

[8] McAdams claims the reviews are pro forma. Admittedly, the review team does not materially revise the reasons for keeping McAdams on LTAS at each review. But "[c]ircumstances justifying an inmate's continuation in administrative segregation are often slow to change. This is especially so when the placement is based on documented threats to the inmate's life and the inmate's history of retaliatory violence." *See Stallings*, 492 F. App'x at 845 n.3. He also claims the reviews are a "sham" because the results are predetermined by two defendants (the deputy warden and housing manager) who have directed their staff not to recommend returning him to general population. (R. Vol. 1 at 158.) But McAdams has not alleged what role, if any, these staff members and their recommendations have in the review process.

assuming they included conduct used by the DOC to justify McAdams' confinement in LTAS, no double jeopardy violation occurred. Because he was not punished by the State for the conduct, nothing in the double jeopardy clause prevents the DOC from "punishing" McAdams for the conduct. *See United States v. Rentz*, 735 F.3d 1245, 1252 (10th Cir. 2013) (stating the double jeopardy clause "protects criminal defendants against *multiple punishments* for the same offense imposed in a single proceeding") (emphasis added) (quotation marks omitted). In any event, "[b]ecause the Double Jeopardy clause only applies to proceedings that are essentially criminal in nature, it is well established that prison disciplinary sanctions—such as administrative segregation—do not implicate double jeopardy protections." *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (quotation marks omitted).

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge