**Jorge CASANOVA, Plaintiff–Appellant,**

v.

**Robert ULIBARRI, Warden, Defendant–Appellee.**

**No. 14–2029.**

United States Court of Appeals, Tenth Circuit.

Aug. 6, 2015.

Jorge Casanova, Albuquerque, NM, pro se.

Melinda L. Wolinsky, New Mexico Corrections Department Office of General Counsel, Santa Fe, NM, for Defendant–Appellee.

Before HARTZ, McKAY, and MATHESON, Circuit Judges.

## ORDER AND JUDGMENT *

MONROE G. McKAY, Circuit Judge.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

Plaintiff Jorge Casanova, a former state prisoner, raised several claims against Defendant Robert Ulibarri, the former warden of the prison where Plaintiff was incarcerated. He now appeals the district court's entry of summary judgment to Defendant on three claims: (1) a due process claim arising out of Plaintiff's placement in administrative segregation; (2) an Eighth Amendment medical-treatment claim relating to the withholding of his medical equipment and the allegedly inadequate medical care he received while in segregation; and (3) an Eighth Amendment failure-to-protect claim arising out of his placement in general population following his release from segregation. Plaintiff also contends

the district court erred in failing to recognize an Eighth Amendment medical-treatment claim based on the time he spent in general population.

Taken in the light most favorable to Plaintiff, the record establishes several pertinent facts. Plaintiff is a Cuban refugee who suffers from many severe health problems as the result of torture inflicted by the Cuban government based on his past political activism. Following his conviction on New Mexico state criminal charges, Plaintiff was incarcerated in a state prison located in Los Lunas, New Mexico, from February 2002 to March 2007. When he was taken into state custody in February 2002, his physician and attorney sent letters to the prison to inform officials of Plaintiff's health needs, including his need to retain his Continuous Positive Airway Pressure (CPAP) machine to treat his severe sleep apnea. His physician told the prison: "It is essential that Mr. Casanova have his Continuous Pressure Airway instrument and oxygen while he is incarcerated. . . . If this should be withheld from him for any reason, I must consider this . . . withholding of essential medical treatment on the part of the criminal justice system." (R. vol. I at 128.)

Until November 2006, Plaintiff was housed in the prison's geriatric unit, a unit for inmates over the age of fifty-five who have medical conditions. The geriatric unit is located close to the prison hospital, has constant access to nursing care, and provides inmates with more comfortable conditions than the prison's general population housing.

All of the claims at issue in this appeal arose from an incident which occurred on November 6, 2006, soon after Defendant

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

became warden of the prison. According to sworn statements written by Plaintiff and other inmates, Defendant was present when a correctional officer against whom Plaintiff had previously filed grievances searched Plaintiff's housing unit and allegedly discovered a contraband tobacco-like substance among Plaintiff's belongings. Defendant then personally ordered Plaintiff to be removed from the geriatric unit and placed in segregation. When Plaintiff asked to take his CPAP machine with him, Defendant simply "said in [a] loud voice: 'Put this man in Segregation.'" (R. vol. 1 at 440.) Plaintiff was then handcuffed and sent to segregation without his CPAP machine, glasses, orthopedic shoes, coat, or other medical or personal belongings.

Plaintiff remained in segregation without his medical equipment and other belongings until mid-December 2006, when prison officials declined to pursue contraband charges against him. He was then released into general population rather than being returned to the geriatric unit. Following his placement in general population, he was able to regain possession of his CPAP machine and other belongings. He remained in general population until his release from the state prison in March 2007. He then spent eleven months in a hospital as a result of the medical deterioration he experienced while incarcerated.

The district court granted summary judgment to Defendant on the three claims that are at issue in this appeal: (1) Plaintiff's due process claim arising out of his placement in segregation; (2) his Eighth Amendment claim arising out of the withholding of his medical equipment and inadequacy of the medical care he received in segregation; and (3) his Eighth Amendment failure-to-protect claim based on his placement in general population following his release from segregation. We review the district court's summary judgment decision de novo, applying the same standards as the district court. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir.2012).

■ In *Estate of DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334 (10th Cir.2007), we discussed four non-exclusive factors that may be pertinent in evaluating whether a prisoner's confinement in administrative segregation has violated a liberty interest, thus giving rise to a due process right: "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ...; and (4) the placement is indeterminate." 473 F.3d 1334, 1342 (10th Cir.2007). We agree with the district court that these factors do not indicate Plaintiff's due process rights were violated when he was placed in segregation for approximately one month while prison officials investigated and decided whether to pursue charges against him based on a correctional officer's alleged discovery of contraband among his belongings.

Plaintiff mainly argues his due process rights were violated because he was a geriatric patient with serious medical needs and he was sent to segregation without his orthopedic shoes, coat, glasses, CPAP machine, television, or radio. However, we agree with the district court that Plaintiff's allegations regarding the deprivation of his medical equipment and the inadequacy of the medical care he received in the segregation unit should be evaluated as part of his first Eighth Amendment claim and not as part of his due process claim. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) ("[W]e have previously noted that where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection

should be analyzed under those provisions and not under the more generalized provisions of substantive due process.") As for Plaintiff's other challenges to the conditions of his confinement in segregation, we have previously concluded that similar conditions are insufficient in themselves to give rise to a due process claim. *See, e.g., McAdams v. Wyo. Dep't of Corrections*, 561 Fed.Appx. 718, 721–22 (10th Cir.2014); *Blum v. Fed. Bureau of Prisons*, 1999 WL 638232, at *3 (10th Cir.1999). For substantially the same reasons given by the district court, we conclude that the evidence does not permit a finding that Plaintiff's due process rights were violated by his placement in segregation.

We turn then to Plaintiff's Eighth Amendment medical-treatment claim based on the withholding of his medical equipment and the allegedly inadequate medical care he received during his time in segregation. Prison officials have a "constitutional obligation 'to provide medical care for those [the government] is punishing by incarceration,'" *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir.1980) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), and a prison official violates the Eighth Amendment if he acts with deliberate indifference to a prisoner's serious medical needs, *see Estelle*, 429 U.S. at 104, 97 S.Ct. 285. To demonstrate deliberate indifference, a prisoner must satisfy both an objective and a subjective prong. *Al–Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir.2014). "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause," while "[t]he subjective prong examines the state of mind of the defendant, asking whether the official knew of and disregarded an excessive risk to inmate health or safety." *Id.* (internal quotation marks and brackets omitted).

■ The district court granted summary judgment to Defendant based on the subjective prong of this test. The court concluded there was no evidence Defendant knew that Plaintiff was not receiving medical care and was without his medical equipment while in segregation.[1] However, in reaching this conclusion, the court ignored Plaintiff's evidence that Defendant personally ordered Plaintiff to be placed in segregation, yelled at him when he asked to take his CPAP machine, and then sent him off to segregation without his CPAP machine, glasses, and other medical equipment. "[I]t is of particular significance in this case that deliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a [prisoner], but also by intentionally interfering with the treatment once prescribed." *Martin v. Bd. of Cnty. Comm'rs of Pueblo Cnty.*, 909 F.2d 402, 406 (10th Cir.1990); *see also Estelle*, 429 U.S. at 105–06,*97 S.Ct. 285 (holding that deliberate indifference to serious medical needs

---

1. The court reached this conclusion in part because prison officials did not answer any of Plaintiff's attorney's numerous phone calls to the prison to complain about Plaintiff's lack of medical treatment and equipment in segregation, and thus the court concluded there was no evidence that Defendant was directly told about Plaintiff's medical difficulties and requirements. Because we reverse the district court's summary judgment decision based on evidence that Defendant personally and intentionally interfered with Plaintiff's medical treatments, we need not here resolve the question of whether a prison official may be found liable under a deliberate indifference theory when the evidence, taken in the light most favorable to the prisoner, indicates that the prison official systematically avoids learning of constitutional violations against prisoners by maintaining an inadequate communications system which prevents such violations from being reported to him.

violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). Viewing the evidence in the light most favorable to Plaintiff, Defendant intentionally interfered with the treatments prescribed for an ill geriatric patient by personally refusing to allow him to keep the medical equipment which he needed and had been authorized to use in prison. This evidence is sufficient to satisfy the subjective prong of the deliberate indifference test. Plaintiff did not need to additionally prove that he or his attorney continued to remind Defendant of the precarious medical situation he had placed Plaintiff in throughout the period of his segregation.

■ In an earlier decision denying summary judgment to Defendant, the district court concluded that Plaintiff had submitted sufficient evidence to satisfy the objective prong of the deliberate indifference test. The court noted that Plaintiff had submitted sworn statements regarding the deterioration of his health while he was in segregation, as well as statements from other inmates regarding his serious condition when he was released into general population and additional evidence substantiating his claim that he was hospitalized for almost a year following his release from prison. We agree with the district court that this evidence, taken in the light most favorable to Plaintiff, is sufficient to show a serious medical condition satisfying the objective prong of the test. Because we conclude Plaintiff also presented sufficient evidence that Defendant acted with deliberate indifference to Plaintiff's serious medical needs, we reverse the district court's grant of summary judgment in favor of Defendant on Plaintiff's Eighth Amendment medical-treatment claim.

■ We turn next to Plaintiff's Eight Amendment failure-to-protect claim based on his placement in general population following his release from segregation. "[I]n order to establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir.2001). Plaintiff contends his placement in general population put him at substantial risk of serious harm because he was an infirm and elderly man, it was well-known that Plaintiff's twin sons were correctional officers at a different detention center, and Plaintiff's criminal charges involved a seventeen-year-old girl who was a local celebrity and "cult idol within the boxing sports in New Mexico." (Appellant's Opening Br. at 25 (capitalization standardized).) However, Plaintiff has not shown that he suffered any physical or psychological harm (apart from ongoing problems relating to his medical conditions) as a result of his placement in general population, nor has he shown that Defendant threatened him, spread damaging information about him, or otherwise took any affirmative actions that placed him at an increased risk of harm. Under all of the circumstances of this case, we conclude that Plaintiff's evidence is insufficient to establish a triable failure-to-protect claim based on his placement in general population. *See Riddle*, 83 F.3d at 1205 (holding that the plaintiff must show "more than a conclusory claim of being afraid" that other inmates might harm him after discovering his status as a sex offender in order to establish an Eighth Amendment violation); *Street v. Fair*, 918 F.2d 269, 272 (1st Cir.1990) (rejecting an

Eighth Amendment claim where "plaintiff has made no allegation that he was physically attacked," and, while he "complains in conclusory fashion of being 'afraid' and 'aggravated,' . . . he has detailed no specific circumstances that would necessarily support a claim of mental suffering"); cf. *Benefield*, 241 F.3d at 1271–72 (holding that a plaintiff had sufficiently alleged an Eighth Amendment violation where a prison official allegedly told other inmates the plaintiff was a snitch, causing him to fear attacks and even death, since "the Eighth Amendment may be implicated not only to physical injury, but also by the infliction of psychological harm.").

Finally, we consider Plaintiff's argument that the district court failed to recognize an Eighth Amendment medical-treatment claim based on Plaintiff's time in general population. The complaint does not clearly include such a claim, and Plaintiff never moved to amend the complaint to include this potential claim. Moreover, it is not clear from the record what the specific basis for such a claim would be. Under these circumstances, we hold the district court did not err in failing to recognize and address a potential Eighth Amendment medical-treatment claim arising out of Plaintiff's time in general population.

For the foregoing reasons, we **REVERSE** and **REMAND** the district court's grant of summary judgment in favor of Defendant on Plaintiff's Eighth Amendment medical-treatment claim arising out of his placement in segregation without any of his medical equipment. We **AFFIRM** the district court's grant of summary judgment on Plaintiff's other claims for relief. Appellant's motion to proceed *in forma pauperis* on appeal is **GRANTED.**