PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3611
_____

PHILLIP LEE FANTONE,

Appellant

v.

FRED LATINI, JOE BURGER, and RON MACKEY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-12-cv-01691)
Honorable Cynthia R. Eddy, Magistrate Judge
_____

Argued December 9, 2014

BEFORE: VANASKIE, GREENBERG, and
COWEN, Circuit Judges

(Filed: February 18, 2015)
_____

Tarah E. Ackerman
Thomas S. Jones
Peter D. Laun (argued)
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, Pa. 15219

    Attorneys for Appellant

Kathleen G. Kane
Attorney General
John G. Knorr, III
Chief Deputy Attorney General
Kemal A. Mericli (argued)
Senior Deputy Attorney General
Robert A. Willig
Office of Attorney General of Pennsylvania
564 Forbes Avenue
Manor Complex
Pittsburgh, Pa. 15219

    Attorneys for Appellee

_____

OPINION

_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

Though criminal convictions followed by imprisonment

deprive defendants of their freedom, inmates nevertheless retain certain constitutionally protected property and liberty interests. Thus, the Due Process Clause in the Fifth and Fourteenth Amendments prohibits the federal and state governments from depriving an inmate of life, liberty, or property without due process of law.[1] In this case, we consider whether a state has interfered unlawfully with an inmate's protected liberty interests with respect to the conditions of his confinement and the possibility of his parole and whether a state officer may have unlawfully retaliated against the inmate for exercising his constitutional rights.

The Commonwealth of Pennsylvania incarcerated appellant Phillip Lee Fantone in 2010 in a state correctional institution. The Pennsylvania Board of Probation and Parole (the "Parole Board") granted him parole, but, by reason of prison discipline proceedings filed against Fantone, the Parole Board rescinded that decision. Fantone subsequently brought this case in the District Court alleging that by their wrongful actions, defendants, now appellees, unlawfully caused him to be confined in a prison Restrictive Housing Unit ("RHU"), which, in turn, led the Parole Board to rescind his parole. Defendants made a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which the Court granted. Fantone appeals, contending that the combination of the rescission of his parole and his confinement

---

[1] See U.S. Const. amends. V, XIV. The Due Process Clauses are designed to protect the individual against arbitrary government action. See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975 (1974). We are referring to the clauses in the singular in this opinion.

3

in the RHU infringed his legally cognizable liberty interests, thereby violating his right to due process of law. He further charges that defendants conspired to deprive him of these due process rights. Finally, he claims that correctional officer Joe Burger unlawfully retaliated against him by having him retained in the RHU after the expiration of the period of his disciplinary confinement because Fantone would not confess to the charges in the disciplinary proceedings and because he filed a grievance against Burger charging that Burger threatened him.

Perhaps the most significant legal principle leading to our result on this appeal is that where state law provides parole authorities with complete discretion to rescind a grant of parole prior to an inmate's release, the inmate does not have a constitutionally protected liberty interest in being paroled before his actual release. See Jago v. Van Curen, 454 U.S. 14, 102 S.Ct. 31 (1981). Because Pennsylvania law provides that the Parole Board may rescind a determination granting parole at any point before it is "executed"—i.e., an inmate is released—we determine that Fantone did not have a liberty interest in the pre-execution grant of parole. Moreover, inasmuch as an inmate does not have a right to be confined in any particular housing unit in a prison, absent certain atypical and significant hardship, when an inmate is placed in a restrictive custody unit, his liberty interests have not been infringed. See Johnson v. Commonwealth, 532 A.2d 50, 52 (Pa. Commw. Ct. 1987). We therefore will affirm the District Court's dismissal of Fantone's due process and conspiracy claims, as they are based on the rescission of his parole and the place of his confinement. For the reasons set forth below, however, we will reverse the Court's order dismissing his retaliation claims against Burger and remand that aspect of this case for further proceedings.

4

## II.  JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. § 1343(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.  STANDARD OF REVIEW

Inasmuch as the District Court dismissed Fantone's complaint pursuant to Fed. R. Civ. P. 12(b)(6), we review all of its findings de novo, and, for purposes of this opinion, "accept the truth of all the factual allegations in the complaint and . . . draw all reasonable inferences in favor of [Fantone]." Revell v. Port Auth., 598 F.3d 128, 134 (3d Cir. 2010).

## IV.  FACTUAL AND PROCEDURAL BACKGROUND

Pennsylvania incarcerated Fantone as a parole violator in 2010.[2]  At that time, it held him at the State Correctional Institution-Pittsburgh ("SCI-Pittsburgh").  In March 2012, when Fantone was eligible for parole, he appeared before the Parole Board.  The Parole Board exercised its discretion to grant him parole, and it informed him of this decision on or about April 18, 2012.  However, in the weeks between Fantone's parole hearing and the Parole Board's decision, prison officers charged

---

[2] We are not concerned with Fantone's antecedent criminal conduct.

Fantone with "cupping" methadone and transferring it to other inmates. Because of these allegations, the prison officers transferred Fantone to the RHU. After Fantone's transfer, Burger interrogated him about the methadone charges. Burger told Fantone that two nurses had seen him cupping his medication and that a surveillance video recorded this activity. Fantone alleges that during this interrogation, Burger threatened to "bury [Fantone] in this hole and you'll never see population here and then I'll have you shipped so far away you'll never get a visit." App. 46. Fantone subsequently filed a grievance against Burger, complaining of these threats.

Fantone appeared before an examiner, defendant Ron Mackey, for a hearing on the methadone allegations. Defendant Lieutenant Fred Latini and Burger met privately with Mackey before Fantone entered the hearing room. During the hearing, Mackey indicated that Latini and Burger had presented credible statements from two confidential informants supporting the cupping allegations. Based on that evidence, Mackey found Fantone guilty of cupping his methadone and sanctioned him to serve 35 days in the RHU, time he already had served. This disposition imposed a term of disciplinary custody, which is distinguishable from administrative custody as disciplinary custody, unlike administrative custody, is imposed as a punishment.

Fantone contends that due to procedural improprieties, he was denied due process of law in those proceedings. He also alleges that during the hearing, Burger remained within earshot outside of the hearing room, listening to the proceedings through an open door. Fantone further alleges that Burger informed Latini of Fantone's sentence of time served but that Latini nevertheless ordered Fantone to remain in the RHU on

6

administrative custody status until May 8, 2012. Then, as a condition of release from the RHU, the prison staff required Fantone to write a statement revoking his grievance against Burger, and he did so under duress.

On May 12, 2012, after being back in the general population for four days, the prison officers transferred Fantone again to the RHU on administrative custody status during the investigation of a second misconduct charge against him, this one relating to graffiti in his cell. The hearing on the second misconduct charge was continued until June 12, 2012, and until that time, Fantone remained in the RHU. When the hearing reconvened with Latini appearing as a witness, Mackey found Fantone guilty once again and sanctioned him to 90 days of disciplinary custody. Fantone contends that as he was being escorted back to the RHU, Burger taunted him by "flex[ing] his biceps with a slow robot type gait as if in victory." App. 77.

Fantone contends, and we accept the contention in these proceedings, that these disciplinary actions led the Parole Board to rescind Fantone's parole. However, Fantone successfully obtained dismissal of both misconduct charges on administrative appeal due to a lack of reliable evidence. Nevertheless, the Parole Board did not reinstate Fantone's parole, and he remained in the RHU until the prison authorities transferred him to another correctional institution on November 1, 2012. We were told at oral argument that Fantone was not released from the second institution until he had served his entire term, or in the vernacular, had "maxed out."

On November 19, 2012, Fantone initiated a pro se civil

7

action in the District Court against Latini, Burger, and Mackey.[3] His complaint, as later amended, set forth claims for due process violations, conspiracy, and retaliation. Fantone attributed his loss of parole and confinement to the RHU to defendants' unlawful actions. In addition, as we have indicated, Fantone asserted that Burger wrongfully retaliated against him because he would not confess to the methadone charge and because he filed a grievance against Burger. The parties agreed to present the case to a magistrate judge for disposition, and the case was assigned to Magistrate Judge Cynthia Reed Eddy. Pursuant to a motion by defendants, now appellees, the Court dismissed this case in its entirety by order of August 8, 2013, for failure to state a claim. In reaching its conclusion, the Court reasoned as follows: (1) defendants did not deprive Fantone of a liberty interest and thus did not infringe his due process protection; (2) his related conspiracy claim failed because there could not be a conspiracy to violate the Due Process Clause without a violation of the Clause; and (3) the retaliation claim failed because Fantone's pleadings did not adequately claim that his filing of a grievance against Burger and his refusal to confess to the methadone allegations led to Burger retaliating against him. Fantone timely filed a notice of appeal, and we now decide the case.[4]

## V. DISCUSSION

---

[3] There originally were other defendants, but they no longer are parties.

[4] We thank Fantone's attorneys on this appeal for their fine representation of him on a pro bono basis.

We are guided here by the concerns undergirding the liberty interests protected by the Due Process Clause. Under certain circumstances, states may create liberty interests with respect to inmates' rights that are protected by the Clause, but these interests generally will be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995); see Bd. of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415 (1987). Accordingly, though inmates do not shed all constitutional rights at the prison gate, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Jones v. Prisoners' Labor Union, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537 (1977) (quoting Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.

A. Due Process Claim: Fantone's Combination Theory Does Not Create a State-based Liberty Interest.

The District Court properly dismissed Fantone's due process claim. In his complaint, Fantone asserts that he was denied due process in the methadone misconduct proceedings that resulted in his sentence to disciplinary confinement in the RHU and, in turn, led to the rescission of his parole. The Court dismissed Fantone's claim based on a determination that his due process rights had not been implicated in the misconduct proceedings because those proceedings resulted in such brief confinements to the RHU that, even when coupled with the rescission of the grant of parole, the proceedings did not

9

implicate his liberty interests.

The requirement that the government afford due process of law to the entities and individuals with whom it deals applies only in situations in which the governmental action implicates some protected life, liberty, or property interest of the entity or individual. In this case, Fantone contends that the implicated interest relates to the place of his confinement and his possibility of being paroled. The Supreme Court and this Court long have held that liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868-69 (1983) (citing Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 2537-40 (1976)); Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999). Fantone concedes that he does not have a liberty interest arising directly from the Due Process Clause but contends that the combination of his confinement in the RHU and the rescission of his parole infringed his state-created liberty interests. In short, he went from the verge of release on parole to being denied parole and being confined in the RHU. His argument includes the contention that his liberty interests were implicated because the rescission of his parole effectively lengthened his sentence. Though there is no question that this theory is thoughtful and well crafted, we reject it.

Sandin v. Connor provides that an inmate's liberty interests generally will be limited to freedom from restraint imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300. Although we have not conclusively determined the baseline from which to measure what is "atypical and significant" in any particular prison system, and we do not do so here, we are satisfied that Fantone has not demonstrated

that he had a liberty interest that defendants could have infringed.

Fantone rests his "combination" argument on the Supreme Court decision in Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384 (2005). Wilkinson involved the placement of an inmate in one of Ohio's most extreme penitentiaries, its "Supermax" facility, in which conditions are "more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units." Id. at 214, 125 S.Ct. at 2389. Once confined in the Supermax facility, an inmate remains there indefinitely, with only annual reviews. Moreover, inmates lose parole eligibility while incarcerated in the Supermax facility. Id. at 214-15, 217, 125 S.Ct. at 2390-91. The Wilkinson Court held that this combination of circumstances sufficed to create atypical and significant hardship, in relation to the ordinary incidents of prison life, so that confinement in the Supermax facility could infringe an inmate's liberty interests and the inmate therefore had a due process right in the procedure leading to that deprivation. Id. at 223-24, 125 S.Ct. at 2394-95. In reaching its result the Court emphasized the facility's extreme conditions, especially its "prohibition on almost all human contact," the indefinite confinement, and a Supermax inmate's "automatic disqualification" for parole consideration. Id.

These factors, however, do not commix here analogously. Fantone's circumstances do not present hardship that is atypical and significant when compared to the ordinary incidents of prison life, so it cannot be said that defendants' actions infringed his liberty interests. Id. at 223-24, 125 S.Ct. at 2394-95. The conditions in the RHU at SCI-Pittsburgh are quite different from those in the Supermax facility that the Supreme Court described

11

in <u>Wilkinson</u>. As a baseline point of contrast, the RHU offers the inmates confined in it, whether on administrative or disciplinary confinement, markedly more human interaction and bodily movement than is allowed in Ohio's Supermax facility. <u>Wilkinson</u> describes how the Supermax facility's prisoners are kept in a single small cell for 23 hours each day and are permitted to leave only for one hour's exercise. As the Court described, "it is fair to say inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact." <u>Id</u>. at 214, 125 S.Ct. at 2389. Fantone faced far less restrictive constraints in the RHU. Moreover, placement in the Supermax facility is indefinite, and, after an initial 30-day review, the placement is reviewed just annually. Fantone, in contrast, was in the RHU, at least while on disciplinary confinement, for a set term of days, and his confinement in the RHU was subject to regular reviews.[5] <u>See, e.g.</u>, <u>Stallings v. Werholtz</u>, 492 F. App'x 841, 845-46 (10th Cir. 2012) (non-precedential) (existence of periodic review of administrative custody in the Kansas system distinguishes it from <u>Wilkinson</u>). Finally, unlike the Supermax inmates, Fantone was not disqualified for parole consideration.

This last consideration is significant: despite the language with which Fantone describes the rescission of his parole, he did not become ineligible for parole simply because of his placement in the RHU. To the contrary, when the Parole Board rescinded Fantone's parole, it repeated the procedural process

---

[5] Requirements governing Fantone's placement in administrative confinement mandated a weekly review of his placement for the first two months and every 30 days thereafter. Fantone does not claim that there were procedural delays of review during this confinement.

that it had followed when it granted him parole as both times it reached its decision by exercising its discretion. Where state law provides parole authorities complete discretion to rescind a grant of parole prior to release, an inmate does not have a constitutionally protected liberty interest in being paroled. See Jago, 454 U.S. at 23, 102 S.Ct. at 37 (Blackman, J., concurring). Critically, as we have pointed out, Pennsylvania law provides that the Parole Board may at any time rescind an order granting parole until it is "executed"—i.e., the inmate is released on parole. See Johnson, 532 A.2d at 52. Though the misconduct allegations against Fantone probably caused the Parole Board to rescind his parole, and we assume as much on this appeal, "[n]othing in [a state's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence." Sandin, 515 U.S. at 487, 115 S.Ct. at 2302. In this regard, we have not overlooked the fact that Fantone was cleared of the misconduct charges on administrative appeal. Rather, we will not equate such vindication with a defendant's acquittal at a criminal trial following which the defendant cannot be punished in that proceeding for committing the offense for which he had been tried.

Ultimately, we conclude that Fantone's due process argument is unvailing. The combination of his retention in the RHU and the rescission of his parole did not infringe his liberty interests. In reaching our result, we note that it is consistent with the result in non-precedential opinions of panels of this Court. In Boone v. Nose, 530 F. App'x 112 (3d Cir. 2013) (non-precedential), a Pennsylvania inmate had been given a 60-day term of disciplinary confinement on a misconduct conviction that later was reversed on administrative appeal but that, in the meantime, had resulted in the rescission of a grant of parole. A panel of this Court found that the inmate did not have

13

a protected liberty interest to which the right to due process might attach. Id. at 114. Similarly, a panel of this Court held recently in Barna v. Boyce, 563 F. App'x 103 (3d Cir. 2014) (non-precedential), that an inmate's placement in the RHU for 30 days as a disciplinary sanction could not violate his due process rights absent a showing that placement in the RHU and its conditions constituted atypical and significant hardship in relation to ordinary incidents of prison life. The panel determined that a due process protection had not been triggered when the inmate's alleged misconduct resulted in the rescission of his grant of parole and a subsequent lengthened duration of confinement. Id.[6]

Fantone did not have a liberty interest that defendants could have infringed because the misconduct determinations, his time in the RHU, and the rescission of his parole did not, either alone or in combination, create atypical and significant hardship in relation to the ordinary incidents of prison life. Accordingly, we will affirm the District Court's order dismissing Fantone's due process claim.

> B. Conspiracy Claim: The District Court Properly Dismissed the Conspiracy Charge.

As Fantone's counsel acknowledged during oral argument, his conspiracy complaint "rises and falls" with his

---

[6] We are not treating the cited non-precedential opinions as authority or binding precedent on this appeal even though we find their analyses helpful. Rather, we reach our result by conducting our own analysis.

due process claims. Because we find that Fantone does not have an actionable claim against defendants for the deprivation of his due process rights, as the alleged deprivation did not infringe his liberty interests, he cannot have a corresponding and dependent claim against them for having engaged in a conspiracy to deprive him of those rights. Therefore, we agree with the District Court's dismissal of the conspiracy claim. See, e.g., Perano v. Twp. of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011 ) (non-precedential) (without grounds for an independent finding that a plaintiff has been deprived of a constitutional right, there can be no claim brought against the defendants for conspiracy to violate those rights).[7]

C. Retaliation Claim: The District Court Improperly Dismissed the Retaliation Claim.

Finally, we review the District Court's dismissal of Fantone's retaliation claim against Burger that Fantone predicates on his confinement in administrative custody in the RHU. Fantone treats this claim as being under 42 U.S.C. § 1983 and we agree with this approach. When a plaintiff makes a retaliation claim, he alleges that: (1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Fantone claims that Burger retaliated against him because Fantone refused to

---

[7] We agree with the acknowledgement of Fantone's counsel but have reviewed the matter independently and have come to the same conclusion.

provide a written confession to the methadone cupping charge and because he filed a grievance against Burger for threatening him during his interrogation. In particular, Fantone alleges that Burger threatened to cause him to be held in the RHU after his disciplinary custody term had expired, and actually did so.

The District Court dismissed Fantone's retaliation claim for two reasons. First, the Court found that "Burger's verbal threats made during the interrogation . . . were allegedly made before Plaintiff had filed his grievance or engaged in any other type of constitutionally protected activity." App. 20. Second, the Court determined, with respect to Fantone's allegation that Burger caused him to be put in the RHU following disciplinary custody, that "Plaintiff's Complaint clearly states that Plaintiff was placed in administrative custody 'per Lt. Latini,' not Defendant Burger." Id. 21. For the reasons we explain below, we disagree with the Court's treatment of Fantone's retaliation allegations and determine that it failed to give proper deference to his pro se pleadings. We accordingly will reverse the Court's dismissal of the retaliation claim and remand the case to that Court for further proceedings on his retaliation claim against Burger.

1. Fantone's complaint sufficiently alleges that he suffered adverse action motivated by his exercising constitutionally protected activity.

In Count Four of the complaint, Fantone contends that Burger violated his First Amendment rights and sets forth, in three paragraphs, the retaliatory acts that he argues constituted such a violation. The District Court focused on these allegations in discussing the retaliation claim but failed to consider that all

16

of Fantone's protected activity, as well as all of Burger's alleged retaliatory actions, should be read as events in a continuum.

Of course, the District Court correctly recognized that Burger's threats came before Fantone filed his grievance against him.[8]  After all, the events had to be in that order because the grievance complained of the threats.  Fantone's complaint, however, asserts that the threats came <u>after</u> Fantone exercised his Fifth Amendment right to refuse to write a confession to the methadone allegations, which he contended were false.  When we read his <u>pro</u> <u>se</u> complaint fairly, we can see that Fantone does describe the critical incident sufficiently: that is, Fantone exercised a Fifth Amendment right when he refused to write a confession, and Burger threatened him with retaliatory action for exercising that right.

Fantone was entitled to invoke Fifth Amendment protection when asked to write a confession to the methadone allegations.  Though we will assume without deciding that an inmate does not have a right to remain silent when questioned about allegations of prison misconduct that do not rise to the level of criminal activity, an inmate does have this right when the alleged prison misconduct included criminal acts.  The allegation in the first set of charges against Fantone was that he illegally transferred methadone, a Schedule II controlled substance under Pennsylvania law.  28 Pa. Code §

---

[8] The filing of a prison grievance is an activity protected by the First Amendment. <u>See</u> <u>Allah v. Al-Hafeez</u>, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002) ("both filing a lawsuit and filing grievances are protected activities") (citing <u>Anderson v. Davilla</u>, 125 F.3d 148 (3d Cir. 2001), and <u>Herron v. Harrison</u>, 203 F.3d 410, 415 (6th Cir. 2000)).

25.72(c)(2)(xi) (2006).  The unauthorized transfer of a Schedule II controlled substance is a felony.  35 Pa. Cons. Stat. Ann. § 780-113(a)(30) (2006).  As such, when Fantone was asked to write the confession, he was protected by the Fifth Amendment, which "'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'"  Baxter v. Parmigiano, 425 U.S. 308, 316, 96 S.Ct. 1551, 1557 (1976) (emphasis added) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 322 (1973)).  Any confession to that conduct surely would have incriminated Fantone if the Commonwealth had instituted a criminal proceeding against him.[9]

### 2. Fantone alleged a causal connection between his protected activity and his placement in administrative custody in the RHU.

The District Court erroneously determined that Fantone did not allege that Burger played any part in his administrative custody commitment to the RHU.  The Court did not afford Fantone's allegations in his amended complaint the liberal reading that Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596 (1972), requires.  The Supreme Court explained in

---

[9] We note that under 42 U.S.C. § 1983, Fantone did not need to allege that his constitutional rights actually were violated—he needed only to claim that he invoked them and suffered as a direct consequence.  See White v. Napoleon, 897 F.2d 103,111-12 (3d Cir. 1990).

Haines that a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and only can be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. at 520-21, 92 S.Ct. at 596; see also Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, (2007) ("a document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (internal citation and quotation marks omitted).

The District Court found that "Plaintiff's Complaint clearly states that Plaintiff was placed on [administrative custody] 'per Lt. Latini,' not Defendant Burger." App. 21. In doing so, the Court did not take into account the assertions in Fantone's amended complaint alleging that while Latini ultimately ordered that Fantone remain in the RHU on administrative custody, Burger listened to the misconduct hearing, heard Mackey commit Fantone to time served, and then communicated with Latini. Fantone alleges that this communication led to Latini issuing his order that Fantone be held in administrative custody.[10] Fantone also alleges that Burger openly mocked him and demonstrated his dominance over him as he was being taken to administrative custody after his second disciplinary conviction, conduct that supports a reasonable inference that Burger was involved in his

---

[10] Fantone also reiterated these allegations in the briefing on defendants' motion to dismiss.

19

confinement in the RHU.[11]

It is not unreasonable to draw an inference that there was a causal connection between Fantone's attempts to exercise his constitutional rights, Burger's actions, and Fantone's subsequent placement in administrative custody in the RHU. Notably, Burger's threats against Fantone match the events that actually occurred: after Fantone refused to confess and later filed a grievance against Burger, he was held in the RHU for the duration of his time at SCI-Pittsburgh, just as Burger threatened. While Fantone's allegations do not "prove" Burger's involvement in the RHU placement, they did not need to do so. After all, as an inmate, Fantone was not privy to private conversations among defendants or given insight into the precise activities and discussions of the prison guards or the prison administration.

In sum, the combination of facts alleged here, both direct and circumstantial, support though do not compel a conclusion that Burger engaged in a retaliatory act leading to Fantone's placement in administrative custody, and at this stage of the proceedings we accept that conclusion for we must draw all reasonable inferences in Fantone's favor. See W. Penn

---

[11] While Fantone phrased these restated allegations as facts lending themselves to conspiracy between Latini and Burger, the nature of Fantone's pro se action requires us to interpret them in connection with whichever claim they support. Haines, 404 U.S. at 420-21, 92 S.Ct. at 596. Because they support Fantone's claim that Burger was responsible for his continued confinement in the RHU in retaliation for Fantone's invocation of his Fifth Amendment rights, and for his filing of a grievance against Burger, the District Court should have taken them into account.

Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 91 (3d Cir. 2010). Though we do not know what facts will be developed at trial, we are satisfied that Fantone pleaded his retaliation claim sufficiently to survive the motion to dismiss.[12]

We hold that a proper analysis of Fantone's retaliation claim would have led the District Court to find that Fantone sufficiently alleged that he engaged in two protected activities—the refusal to sign a written admission of guilt and the filing of a grievance—which together resulted in Burger taking retaliatory action against him that caused Fantone to be confined to the RHU on administrative custody status when he otherwise would have been in the general population. See, e.g., Rauser, 241 F.3d at 333. Accordingly, we will reverse the Court's dismissal of Fantone's retaliation claim and remand the case for further proceedings with respect to Burger.

## VI. CONCLUSION

For the foregoing reasons, we will reverse the order of

---

[12] We are not concerned on this appeal with determining the precise period of Fantone's administrative custody confinement that a trier of fact could attribute to retaliation by Burger. Rather, we merely hold that Fantone's complaint can be read to support a conclusion that he spent some time in administrative custody because of Burger's retaliation against him. Nor are we concerned with the effect of Fantone's initial conviction and subsequent reversal of the disciplinary charges against him. Though these matters may become significant at trial if the case gets that far, they are not germane here.

August 8, 2013, to the extent that it dismissed the retaliation claim against Burger but otherwise will affirm that order.[13] The parties will bear their own costs on this appeal.

---

[13] We are reversing only as to Burger on Fantone's retaliation claim even though in his brief on this appeal he does state that Latini was involved in the retaliation. In this regard, we note that Fantone indicates in his brief that "[t]he District Court also erroneously dismissed [his] retaliation claim against Appellee Burger," Appellant's br. at 29, and in Count Four of his complaint, he only mentions Burger as involved in the retaliation. Moreover, insofar as we are aware Latini had no reason to retaliate against Fantone and, although he could have conspired with Burger to retaliate against Fantone, the District Court dismissed the conspiracy count, which was addressed to Fantone's due process claim, and we are affirming that disposition. We also point out that inasmuch as the District Court decided the case by granting a motion to dismiss, by remanding the case, we are not precluding either Fantone or Burger from moving for summary judgment.

22

*Phillip Lee Fantone v. Latini, et al,* No. 13-3611, Dissenting

COWEN, Circuit Judge.

The major but unarticulated premise of the majority opinion is that if a prisoner is suspicious that corrections officers have illegally retaliated against him, even though there is pled nothing to verify those suspicions, the complaint will survive a motion to dismiss. I cannot join the majority's opinion to the extent it lowers the standard of plausibility that inmates are required to plead to state claims of retaliation. All that is now required to plead causality under the majority opinion is an allegation that two individuals had a conversation, albeit the contents of which are unknown, followed by some adverse action. It is hard to imagine an inmate who will not be able to meet this threshold.

Fantone's retaliation claim is against Burger, yet his complaint does not contain any allegation that Burger engaged in an adverse action against him. Instead, Fantone alleges that Latini ordered him to be placed in administrative custody. But notwithstanding this adverse action, the complaint does not include any indication that Fantone ever filed a prisoner's grievance against Latini or that Latini ever threatened him. Nor is there any allegation that Latini was angered by Fantone's refusal to sign a written confession or that he was aware of Burger's threats against him.

Anticipating this potentially fatal flaw, Fantone attempts to draw a line from Burger to Latini. Fantone predicates this argument on a conversation he observed between Burger and Latini, despite the fact that he could not hear what the two officers were discussing. Fantone's claim

therefore boils down to an allegation that, because Latini ordered that he be placed in administrative custody after he observed Burger talking to him, Latini's order must have been given in retaliation for his grievance against Burger and/or his refusal to sign a confession. This theory is not borne out by the complaint.

Fantone's allegations of retaliation, which are echoed by the majority, are best summed up by his counsel in his reply brief:

> Mr. Fantone argues that he witnessed Appellee Burger listening to the misconduct hearing, and that Burger heard Appellee Mackey commit Mr. Fantone to time served. He then alleges that Burger "communicated with Lt. Latini after the hearing" and, as a result, Appellee Latini ordered that Mr. Fantone be held on Administrative Custody. He also alleges that Appellee Burger only mocked Mr. Fantone and demonstrated his dominance over him as he was taken to administrative custody.

Fantone Reply Br. at 14. Fantone admits that he did not hear any of the substance of the conversation between Burger and Latini.

Nonetheless, and with no further relevant facts pled, he invites us to draw the following inferences: (1) that Burger overheard that Fantone was sentenced to time served, (2) that Burger was angered by this, (3) that Burger relayed this anger

2

to Latini in a conversation following Fantone's misconduct hearing (that Fantone acknowledges he could not hear), and (4) that, notwithstanding the speculation regarding the substance of Burger and Latini's conversation, and the fact that there is no allegation that Burger otherwise had any input in the decision to place him in administrative custody, that Burger was the driving force behind Latini's decision to place Fantone in administrative custody. From these inferences, he concludes that Latini's order was, in actuality, the product of Burger taking retaliatory action against him. Moreover, Fantone asserts that the fact that Burger appeared pleased by Fantone's placement in administrative custody makes it plausible that Latini acted *because* Burger wanted to retaliate against Fantone.

The majority suggests that these inferences are reasonable in light of the liberal pleadings standard afforded to *pro se* litigants. However, even construing Fantone's complaint liberally, bald speculation is insufficient to state a plausible claim under *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Fantone's complaint does not include a retaliation claim against Latini, the officer who ordered that he be placed in administrative custody, and it is devoid of any allegation that Burger himself took any adverse action against him. The majority glosses over these gaping holes in Fantone's complaint. But its recitation of the liberal pleading standard cannot substitute for the fact that there are no allegations connecting Latini's decision to place Fantone in administrative custody with either

3

Burger's threats or Fantone's refusal to sign a written confession.

That dismissal is appropriate here comports with what we have said in the context of conspiracy claims. In Ca*pogrosso v. Supreme Court of the State of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009), a published *per curiam* opinion, a *pro se* plaintiff alleged a "judicial conspiracy" based on the fact that she had observed two judges interacting, followed by an adverse ruling. The plaintiff had filed claims against Judge Fast, alleging that conduct on the bench amounted to criminal behavior. *Id.* at 183.

We acknowledged in that case the same difficulties that Fantone professes to have in pleading his retaliation claim and that are expressed by the majority, namely, "that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances." *Id.* at 184. Nonetheless, in *Capogrosso*, we noted that the plaintiff-appellant, like Fantone, "alleged only that Judge Fast interacted with Judge Iglesias after presumably hearing her discuss her case in a hallway, and that Judge Iglesias' subsequent adverse ruling gives rise to an inference of conspiratorial conduct." *Id.* at 185. In the absence of additional facts linking the adverse action to some larger conspiracy, we agreed with the district court that the plaintiff had failed to state a cognizable claim and affirmed the dismissal of the complaint. *Id.*

Our ruling in *Capogrosso* is sound and I discern no reason why it should not apply to Fantone's retaliation claim.

4

Aside from the mere occurrence of a conversation that Fantone did not hear, there is not a single factual allegation linking Latini's decision to place him in administrative custody to Burger's threats or his refusal to sign a written confession. Such a fact is no more sufficient to state a plausible claim of retaliation than we have already held it to be in the context of a conspiracy. The majority today departs from this principle, preferring, instead, to draw every inference proffered by Fantone, no matter how remote, speculative, or unreasonable. I respectfully dissent.