**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3740
_____

IVES T. ARTIS,
Appellant

v.

BYUNGHAK JIN, (Individual Capacity); CORIZON HEALTH, a/k/a Prison Health
Care Services; MIN H. PARK, (Individual Capacity);
CARE SERVICES, (Official Capacity)

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-13-cv-01226)
District Judge David S. Cercone

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
March 3, 2016

Before:  AMBRO, SHWARTZ and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  March 4, 2016)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Ives Artis appeals from the judgment of the United States District Court for the Western District of Pennsylvania in his § 1983 action. As the appeal does not present a substantial question, we will summarily affirm the decision of the District Court.

I.

Artis initiated this § 1983 action in 2013 against Byunghak Jin, Medical Director at SCI – Greene; Min H. Park, Physician at SCI – Greene; and Corizon Health, a former contractual medical service provider to the Pennsylvania Department of Corrections, alleging that these Defendants denied him adequate medical care in connection with an unspecified left ankle injury he suffered while incarcerated.

Artis alleges that he started experiencing problems with the ankle on July 12, 2010, and that Dr. Jin initially told him, at an unspecified time, that "there was nothing wrong." Artis, however, acknowledges receiving an x-ray on July 12, 2010. He alleges that Jin continued to advise him that nothing was wrong until, according to his complaint, he "lost complete range of motion in Nov[ember] 2010" and was referred at that time for physical therapy. Artis claims that in December of 2010, he read a chart in a physical therapy session in which the physical therapist recommended an MRI, but that on January 18, 2011, instead of ordering an MRI, Dr. Jin "began a process of pacification by allowing me to order outside shoes" and ordered harmful doses of Acetaminophen. He

claims that Jin "refused to acknowledge the injury and consisted to tell me it was merely swelling," and that Jin continually ordered x-rays[1] instead of ordering an MRI.

Artis contends that, at an unspecified time, Jin acknowledged that he had ligament damage, and that Jin "tried to mas[k] the pain" by prescribing Vicodin from February 2012 through October 2012. Artis acknowledges receiving an MRI on April 16, 2012, which he contends revealed soft tissue swelling, fracture fragments, and chronic tears. Artis also acknowledges receiving "air cushioned shoes" and two ankles braces some time before September of 2012.

On September 30, 2012, Artis was placed in the Restricted Housing Unit (RHU) for allegedly selling a portion of his Vicodin prescription, and Artis contends that Dr. Jin suspended his air cushioned shoes, ankle braces, and pain medication the following day. He also contends that Jin directed his subordinates to not treat him while he was in the RHU. Artis grieved this suspension of medical treatment on October 12, 2012, and upon final review of this grievance on April 8, 2013, the Chief Grievance Officer found that Jin suspended the braces and shoes because there was no medical need for these items based on Artis' limited activity in the RHU.

On November 2, 2012, Artis filed a separate grievance related to his lack of medical care in the RHU, but acknowledges in this grievance, contrary to the allegations in his complaint, that he was examined by medical staff at least three times in the RHU in

---

[1] Artis acknowledges receiving x-rays on six separate occasions between July of 2010 and April of 2012.

October of 2012. Regarding the alleged discontinuation of the Vicodin, the Chief Grievance Officer found, upon final review of this grievance, that "medication adjustments [were] made after you were caught selling your Vicodin."

Artis acknowledges the return of his braces and shoes on January 7, 2013, four days after his release from the RHU, and contends that, on January 24, 2013, he "was placed on a walker because I was unable to walk on my own will." He then claims to have been treated, at an unspecified time, by an orthopedic specialist from Allegheny General Hospital, who allegedly observed damage to Artis' right ankle resulting from Artis overcompensating for the injury to his left ankle. Artis received surgery on his left ankle at Allegheny General Hospital on June 10, 2013. The surgical report indicates that Artis had a chronic tear of two ligaments in the ankle, and that treatment options for this injury included both operative and non-operative interventions. The report also notes that Artis had previously received "conservative measures," which were not successful.

Following the surgery, Artis alleges that Jin delayed prescribing him a blood thinner for six days – though he does not allege that he had a blood clot – and "forced" him to use crutches when his right ankle could not sustain the increased weight. He also contends that Park and Jin prescribed only Motrin for the swelling, a medication Artis claims to be allergic to.

On May 27, 2015, the Magistrate Judge recommended that respective motions to dismiss filed by the Medical Defendants and Corizon be granted. On August 14, 2015,

4

the District Judge entered an order adopting the Report and Recommendation over Artis' objections and directed the Clerk to close the case. This timely appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal under Rule 12(b)(6) using the same test that the District Court should have applied and ask whether it has "sufficient factual matter; accepted as true; to state a claim to relief that is plausible on this face." Fantone v. Latini, 780 F.3d 184, 186-193 (3d Cir. 2015) (citing Ashcroft v. Iqbal; 556 U.S. 662 678 (2009)). We may summarily affirm any decision of the District Court where "it clearly appears that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action." 3d Cir. I.O.P. 10.6 (2015).

As to Defendants Jin and Park, the District Court relied on the exhibits attached to Artis' complaint and brief in opposition[2] – primarily Artis' grievances and responses – to determine that Artis' claim amounted to a mere difference in opinion over his particular course of treatment, which is not actionable under the Eighth Amendment. We agree.

The facts, derived from Artis' complaint and exhibits, indicate that he received a variety of medical interventions beginning on July 12, 2010 – the date of his injury – and continuing until after his surgery on June 10, 2013. Beyond the surgery itself, Artis

---

[2] The District Court properly considered these documents. See Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 559 (3d Cir. 2002) (noting that "a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss" and may consider documents attached to a party's complaint or brief) (citing 62 Fed. Proc., L.Ed. § 62:508).

received at least six x-rays, an MRI, physical therapy, various pain medication, supportive braces, cushioned shoes, crutches, and a walker. The gravamen of Artis' complaint is that Defendants should have more aggressively treated his condition and pursued a surgical intervention sooner. The operative report, however, acknowledges that his condition could be treated with "both operative and non-operative treatment options," though it also acknowledges that "the attempted conservative measures . . . had failed." Artis is essentially dissatisfied with the result of the conservative course of treatment and believes, instead, that his providers should have opted for a more aggressive course.[3] In other words, his claim arises from "[m]ere disagreement as to the proper course of medical treatment," which is insufficient to state an Eighth Amendment claim.[4] Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987)); See also Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received

---

[3] In his Argument in Support of Appeal, Artis asks "[i]s it sound judgment for a doctor to know for two years that a[n] injury is apparent but fails to use proper test to further investigate?" This alleged failure in judgment sounds in medical malpractice and is not actionable under the Eighth Amendment Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[4] In his Argument in Support of Appeal, Artis argues that the District Court erred in dismissing his claim as it relates to his 90 days in the RHU when the Defendants allegedly refused to examine him and suspended his assistive devices and pain medication. Artis acknowledges in his complaint, however, that he was examined at least three times while in the RHU. Responses to his grievances indicate that assistive devices were not medically necessary based on his limited activity there, and that Artis' medication was *adjusted* when he was caught selling Vicodin, not that he was altogether deprived of it.

some care, inadequacy or impropriety of the care that was given will not support an

Eighth Amendment claim.").

Having determined that no constitutional violation occurred, we find no error in the District Court's dismissal of Corizon and need not address the question of whether of whether Corizon maintained a policy, custom, or practice causing the alleged violation.

Accordingly, we will summarily affirm the District Court's decision.