DLD-160                                                  **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3466
_____

LAWRENCE STUART,
Appellant

v.

DOCTOR LISIAK; PHYSICIAN ASSISTANT TONY INUZZI;
RNS KAREN HOLLY; JOHN KERESTES, Superintendent of SCI Mahanoy;
DONNA VARNER, PA Department of Corrections;
M. KRANCH; B. COOGAN; DOCTOR JUAN DEROJAS;
JOHN STEINHART, Medical Supervisor at SCI Mahanoy
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-14-cv-01401)
District Judge John E. Jones, III
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit L.A.R. 27.4 and I.O.P. 10.6
February 25, 2016
Before: CHAGARES, GREENAWAY, JR. and SLOVITER, <u>Circuit</u> <u>Judges</u>

(Filed: March 29, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Lawrence Stuart appeals from the judgment of the United States District Court for the Middle District of Pennsylvania in his § 1983 action. As the appeal does not present a substantial question, we will summarily affirm the decision of the District Court.

I.

Stuart initiated this § 1983 action in 2014 against several prison officials and medical personnel from SCI-Mahanoy, in addition to outside medical personnel, alleging that these Defendants denied him adequate medical care in connection with pain and swelling he experienced following hernia surgery.

Stuart claims that he was initially treated at an unspecified time with Dr. Lisiak at SCI-Mahoney in connection with the hernia, and that Dr. Lisiak denied him surgery until Stuart's pain became "unbearable." The earliest indication of Stuart's consultation with Dr. Lisiak is a record from May 18, 2012, where Lisiak reports that Stuart has a "long-standing hernia" and refers him to Dr. Derojas, an outside surgeon, for a June 21, 2012 consultation. At this consultation, Dr. DeRojas observed a "left inguinal hernia he's had now for a couple years." DeRojas also observed that Stuart reported "some discomfort" but denied "nausea, vomiting, diarrhea, constipation." On July 20, 2012, Dr. DeRojas performed a "left inguinal hernia repair" on Stuart, and after the surgery, Stuart complained to DeRojas about a "knot," which DeRojas advised would eventually "go down."

After returning to SCI-Mahanoy the day of the surgery, Stuart was admitted to the infirmary and complained to Dr. Lisiak about pain associated with the knot. Lisiak immediately prescribed Vicodin and motrin to control the pain, and other medication for nausea. On July 23, 2012, Stuart reported "I'm better today, just a little bit swollen." The next day, Stuart reported "I'm much better today [and] the pain is ok." Stuart was discharged from the infirmary the same day, and was then placed on medical lay-in from July 25, 2012 to August 31, 2012, with restrictions on weight-lifting and contact sports.

The next entry in Stuart's medical records is December 21, 2012, when Stuart reported to sick call and complained of firmness and enlargement of his testicle, but denied pain or discomfort. An ultrasound was ordered and performed on January 16, 2013, revealing an abnormality in his left testicle. Stuart was then seen by Defendant Iannuzzi on February 6, 2013, at which time he did not complain of pain or discomfort, and also advised Ianuzzi: "I feel fine. I want to play sports." Stuart was prescribed antibiotics to run through March 1, 2013, and was given an antibiotic injection February 22, 2013. Blood testing was also performed on February 11, 2013 and returned as normal.

At a May 6, 2013 follow-up, Stuart complained again of scrotal pain, and another ultrasound was administered on May 21, 2013. The film revealed a heterogeneous area in Stuart's left testicle, and on May 23, 2013 he was referred back to treatment by Dr. DeRojas. On June 20, 2013, Dr. DeRojas evaluated Stuart and determined that he had a "recurrent hydrocele" – a collection of fluid in the scrotum – and recommended

3

additional surgery.  On July 10, 2013, Dr. Lisiak discussed the surgical plan with Stuart, but Stuart continuously declined any surgical intervention.  On August 21, 2013, Stuart reported to sick call with complaints of scrotal pain, but refused to allow staff to examine him.  Stuart again reported left testicular pain during his biennial physical examination on September 25, 2013, where his testicle was noted to be very tender and he was instructed to wear an athletic supporter to protect it and prescribed antibiotics and Ibuprofen.  Stuart was last seen by medical staff on March 26, 2014, when he walked out of sick call and refused an examination.

In the meantime, on April 29, 2013, Stuart filed a grievance related to his medical care, complaining that the knot resulting from the surgery has failed to dissipate and was still causing him pain – though he acknowledged that he was provided antibiotics and pain medication, in addition to an ultrasound.  Defendant Karen Holly denied the grievance on May 13, 2013, noting the various medications prescribed to him and observing that he requested medical clearance for sports activity on February 6, 2013.  On May 31, 2013, Defendant Superintendent John Kerestes upheld the initial denial, and on August 13, 2013, Defendant Chief Grievance Officer Donna Varner upheld Keresetes' denial, determining that the treatment provided was "reasonable and appropriate," and that "no evidence of neglect or deliberate indifference has been found."

On September 10, 2015, the District Court granted the Corrections Defendants'[1] 12(b)(6) motion to dismiss and dismissed Dr. DeRojas *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii), determining that he was not a state actor. In the same September 10, 2015 order, the District Court granted the Medical Defendants'[2] motion for summary judgment, finding that these Defendants provided Stuart at least adequate, and reasonably prompt, medical treatment, and thus Stuart could not establish that they acted with deliberate indifference. Stuart timely filed a timely notice of appeal from this order on October 9, 2015.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal under Rule 12(b)(6) using the same test that the District Court should have applied and ask whether it has "sufficient factual matter; accepted as true; to state a claim to relief that is plausible on this face." Fantone v. Latini, 780 F.3d 184, 186-193 (3d Cir. 2015) (citing Ashcroft v. Iqbal, 556 U.S. 662 678 (2009)). We exercise the same review over the District Court's dismissal under § 1915(e)(2)(B)(ii). Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

---

[1] "Corrections Defendants" refers to the following employees of SCI-Mahanoy primarily involved in the resolution of Stuart's grievances: Resident Nurse Karen Holly, Superintendent John Kerestes, Medical Supervisor John Steinhart, and Donna Varner.
[2] "Medical Defendants" refers to the following individuals, who are not employees of SCI-Mahanoy: Doctor Lisiak, Physician Assistant Tony Ianuzzi, M. Kranch, and B. Coogan.

We also exercise plenary review over the District Court's award of summary judgment and apply the same test the District Court should have utilized – whether the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). In applying this test, we must accept evidence presented by the non-movant as true and draw all justifiable factual inferences in his favor. Id. We may summarily affirm any decision of the District Court where "it clearly appears that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action." 3d Cir. I.O.P. 10.6 (2015).

The allegations in the complaint against the Corrections Defendants are that they "intentionally deny[ed] or delay[ed]" medical treatment, "failed to supervise their subordinates," and "are personally involved and all responded to my grievance process denying me medical treatment." Stuart does not provide additional specificity concerning the date, time, or context in which these alleged actions and inactions occurred.

The District Court characterized Stuart's claim as "solely aris[ing] out of the alleged failure to intervene in his medical treatment based on the information contained in the grievances, and the failure to satisfactorily resolve his prison grievances." To the extent his claim is accurately characterized as such, the District Court correctly dismissed it. Rogers v. United States, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988)) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident

6

giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

Stuart also alleges, however, that the Corrections Defendants "intentionally deny[ed] or delay[ed]" medical treatment, though it is unclear whether he attributes these denials or delays to the grievance process or some other conduct. Even if the alleged denials or delays arose from conduct separate from the grievance process, Stuart's claim would still fail because it is clear from the complaint that he received substantial medical care, and "[m]ere disagreement as to the proper course of medical treatment" is insufficient to state an Eighth Amendment claim. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987)); See also Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.").

Stuart's claim against Dr. DeRojas rests solely on Stuart's alleged post-surgical development of a "knot" that caused him pain. We need not address the propriety of the District Court's dismissal of Dr. DeRojas as a non-state actor because the allegation against him – that he *might* have improperly performed a hernia surgery resulting in a knot[3] – amounts only to medical malpractice, which is not actionable under the Eighth Amendment. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993) ("[M]edical

---

[3] Stuart does not actually allege any particular wrongdoing against DeRojas in the complaint. He alleges only the development of a knot and associated pain.

7

malpractice does not become a constitutional violation merely because the victim is a prisoner.").

In granting the Medical Defendants' motion for summary judgment, the District Court observed "[t]his is clearly a case where the inmate has received significant medical treatment and he is disputing the adequacy of that treatment . . . [i]t is clear from the medical record that from the time of his surgery on July 20, 2012, up until March 26, 2014, he received prompt and adequate medical treatment every time he presented to the medical department." We agree with the District Court's characterization. The gravamen of Stuart's claim against the Medical Defendants is that he experienced some pain and discomfort from the post-surgical knot and that this condition was not resolved to his liking, even though he acknowledges that he received a variety of interventions.

To the extent that he bases his claim on the propriety of the interventions, it fails as a "[m]ere disagreement as to the proper course of medical treatment." Spruill, 372 F.3d at 235. To the extent that he bases it on the *timeliness* of the interventions, it fails because he has offered no "verif[ied] medical evidence . . . to establish the detrimental effect of [the] delay." Hill v. Dekalb Rg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir.1994) (overruled on other grounds).[4]

---

[4] Throughout his "Statement of Alleged Facts" filed in opposition to the Medical Defendants' motion for summary judgment, Stuart references a nine-year delay in surgery, but fails to provide any conceivable basis for attributing this delay to the Defendants. He also references, as a result of the delayed treatment, a "life long handicap" and "permanent loss," and appears to suggest that he lost his left testicle. He does not, however, offer any verified medical evidence to support this claim.

Accordingly, we will summarily affirm the District Court's decision. The motion for appointment of counsel is denied.